UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY V. BROWN,

Plaintiff,

**COMPLAINT**

-against-                                    Civil Action # 12 - CV - 0736

ERIC T. WAGNER, EDWARD G. HULTON, JR.,
MICHAEL KALINOWSKI, PAUL CHAPPIUS,
DEANNA J. CARHART,
_____ Defendants.

UNITED STATES DISTRICT COURT
FILED
AUG 3 2012
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

The Plaintiff, Gregory V. Brown, pro se, alleges as follows:

## INTRODUCTION AND JURISDICTIONAL STATEMENT

1. This is an action authorized under federal law for physical and psychological injuries and liberty impairments inflicted upon Plaintiff by the Defendants.

2. Plaintiff seeks damages pursuant to 42 USC § 1983 to redress violations of Plaintiff's rights under the United States Constitution.

3. Defendants have, while acted under color of state law, subjected Plaintiff to an unconstitutional interference with his constitutional rights.

4. This Court has subject matter jurisdiction pursuant to 28 USC § 1331(federal question jurisdiction).

5. Venue is properly laid in the Western District of New York, under the provisions of 28 USC § 1391 in that all, or a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District and upon information and belief, all of the parties reside, or are located, within this District.

6. Plaintiff demands a jury trial of this action.

## PARTIES

7. Plaintiff Gregory V. Brown resides in the City of Albany, State of New York.

8. At all relevant times referenced herein, Plaintiff was an inmate at Attica Correctional Facility, located in Wyoming County, New York. Plaintiff was/is not an inmate when he commenced this action.

9. Plaintiff at all relevant times herein suffered from a chronically-separated/"subluxated" right shoulder joint with muscle atrophy and associated weakness in said dominant arm. Defendants had knowledge of Plaintiff's medical condition as he was granted a [then-] Department of Correctional Services "Reasonable Accomodation" therefore.

10. At all times relevant to the complaint, Defendant Eric T. Wagner, Defendant Edward G. Hulton, Jr., Defendant Michael Kalinowski, Defendant Paul Chappius and Defendant Deanna J. Carhart were correctional personnel of varying rank employed at Attica Correctional Facility by the then-New York State Department of Correctional Services(hereinafter "*DOCS*"), now known as the New York State Department of Corrections and Community Supervision("DOCCS"), an agency of the State of New York.

11. Upon information and belief, each of the Defendants reside in the Western District of New York, State of New York.

## FACTUAL ALLEGATIONS

12. From March 2, 2010 until on or about November 8, 2010, Plaintiff was incarcerated at Attica Correctional Facility(hereinafter "CF"), serving a sentence of 15 year to life.

13. Pursuant to appellate ruling, People v. Brown, 77 AD3d 1190(A.D. 3 Dept.2010), on October 28, 2010, this sentence was modified to 2-4 years; Plaintiff had by this date served over

3 years and 5 months of the new sentence.

14. On or about November 8, 2010, Plaintiff was collected by Rensselaer County Sheriff's Deputies for transport to court for re-sentencing pursuant to the above decision.

15. In the course of vacating his housing unit, C-33 "company," Plaintiff was "pat-frisked" by escorting personnel and mail Plaintiff was carrying for supervisory personnel, advising of pilferage of his meals by unit inmate "porters," was taken from him and discarded on the unit floor.

16. As a result, said mail was collected in view of Plaintiff by one of said inmates and kept; Plaintiff departed the unit and facility for court.

17. Following resentencing, Plaintiff was recommitted to the DOCS and, on or about December 1, 2010, returned to Attica CF and housed in C- Block, 31-43 cell, which is one floor beneath the "tier" from which he had departed the previous month.

18. That on or about December 2, 2010, Plaintiff was interviewed by Defendant Kalinowski and thereduring, Plaintiff expressed to Kalinowski that he believed he was entitled to immediate release because he was nearly a year beyond the "conditional release("CR")" date of the modified sentence of 2-4 years, which is 2 years and 8 months. Plaintiff also prevailed on Kalinowski to insure Plaintiff be issued his personal property, namely, his legal paperwork( subsequent to a lackadaisical attitude on the part of issuing personnel and procedure at Attica CF, this often took in excess of a week to occur, during which interim, the inmate had to wear the same clothes, etc.); Kalinowski was frustrated with Plaintiff's overtures and assertions.

19. On or about December 3d or 4th, while conducting a routine check by of the cell

3

window-bar security, Defendant Hulton gestured in a hostile manner behind Plaintiff's back with his baton, which was observed by Kalinowski, acting as unit supervisor/sergeant. By not correcting this aggressive conduct, Kalinowski condoned the same and endangered Plaintiff.

20. On the same date, the C-Block inmate unit clerk, unknown to Plaintiff, was allowed access to 31-32 "companies" in a cell-to-cell search for Plaintiff as the author of the note/message cited in paragraphs 15-16 above. Upon finding Plaintiff, said inmate announced aloud that Plaintiff was a "*rat*" and that he "*better get the fuck off this unit…*"

21. The following day, December 5, 2010, at approximately 1230 p.m., while Plaintiff was attending the noon meal in the facility mess hall/cafeteria, the contents of "his" cell, 31-43, including his legal papers since issued, were set afire by one of the inmate "porters" allowed access to the unit, Plaintiff's cell having been unlocked following his departure for the meal.

22. Upon returning from the meal, Defendant Wagner directed Plaintiff out of the group of inmates he was with and into the C-Block offices to see Defendant Kalinowski, also present was Defendant Hulton.

23. Kalinowski asked Plaintiff is he knew what the [fire alarm] was about, which Plaintiff denied knowledge of and Kalinowski told Plaintiff that "*his*" cell had been "*burned out.*"

24. Alarmed for the security of his legal materials, composed of successive trial and appellate transcripts, a personal journal, inter alia, Plaintiff prevailed on Kalinowski to allow him back to the cell to recover whatever materials might be salvageable, to which Kalinowski consented, directing Wagner and Hulton to escort Plaintiff. Kalinowski asked Plaintiff if he wanted admission to "PC-Protective Custody," which, having heard of harassment of inmates

4

there and averse to the inherent infringement on access to the facility law library, Plaintiff declined, signing a form to such effect offered him by Kalinowski.

25.  While waiting outside Kalinowski's office with his back thereto and hands on the wall above his head as Kalinowski coordinated Plaintiff's rehousing in B unit, Hulton and/or Wagner endeavored to provoke Plaintiff by throwing pistacchio nut shells and other trash items at his back; Hulton threatened to "*break* [Plaintiff's] *fucking neck if* [he] *turn*[ed] *around"* in response to said taunts.  Kalinowski, by not directing Wagner and Hulton to cease this conduct, condoned the same and endangered Plaintiff.

26.  By information and belief, Defendant Kalinowski should have known that Wagner and Hulton presented a risk to Plaintiff by his observation of their harassing and hostile conduct toward Plaintiff.

27.  Momentarily, Plaintiff was escorted by Wagner and Hulton back to cell 31-43 as the rest of the unit, opposing tiers 31 and 32, were secured with inmates within.

28.  Plaintiff recovered his legal paperwork, the bulk of which was only charred at the edges due to a dense text/book-type composition and proceeded to exit the unit, harassed verbally throughout by both Defendants who forced him to drag the waterlogged cell mattress nearly 300' to the front of the unit, collecting unit trash enroute, despite Plaintiff's assertions of an impaired shoulder and medical right arm restriction.  Again, Hulton threatened to "*break* [Plaintiff's] *fucking neck…*"

29.  Wagner then directed Plaintiff to place his property into a hallway cart for movement to B-unit and to then stand inside the narrow 31-32 company entranceway in the "frisk-position," that is, with his back to the passageway and grasping the barrier bars above his shoulders.

5

30. While in said position, Plaintiff was struck from behind under the left jawbone, causing his forehead to impact the bars, which lacerated Plaintiff's scalp, causing profuse bleeding and rendered him unconscious.

31. Plaintiff was transported by wheelchair to the facility infirmary and then to Warsaw County Community Hospital by correctional officers Rusczyk and Zebrowski(phonetic).

32. Plaintiff underwent a CT scan, which was negative, administered two metal staples to close said head wound and returned to Attica CF and ultimately assigned to unit B-18-20 where he was able to salvage and dry out(from extinguishing) the majority of his legal papers.

33. On December 5, 2010, Defendant Wagner composed an "Inmate Misbehavior Report("IMR") alleging Plaintiff had [somehow] set fire to his own property, however absent when this occurred, stating the "*fire marshal*" [attributed] the arson to Plaintiff, though he had not.

34. On December 9, 2010, Plaintiff filed an inmate grievance, alleging he was assaulted by Defendant Hulton, whom Plaintiff believed he had perceived in his peripheral vision immediately before being struck on December 5, 2010.

35. On December 14, 2010, Plaintiff appeared before a Time Allowance Committee("TAC") chaired by Defendant Chappius, whose position at that time was as Deputy Superintendent of Security("DSS") and, as such, was supervisor of facility correctional personnel and of inmate "discipline."

36. At that time, of the sixteen months of Statutory Good Time("SGT") allotted Plaintiff's 2-4 year indeterminate sentence(as modified), only four months had been recommended withheld for "disciplinary" sanctions, imposed over a year earlier; such sanctions

are subject to restoration for subsequent "clear conduct" but this was not done here.

37. Nonetheless, Defendant Chappius advised Plaintiff that "*we're going to take it all…*" and specified on the appropriate form that [12 of the 16 possible months of "SGT"] was being withheld because Plaintiff "*need*[ed]' *A.R.T.*("Aggression Replacement Training")," which Plaintiff had never failed nor refused and for which, in the eight months at Attica CF prior to the sentence modification, he had never been scheduled.

38. New York State Correction Law § 803(a) only provides for the withholding of SGT when an inmate refuses or fails to perform satisfactorily in a program to which *assigned*.

39. Subsequently, Plaintiff was held to the maximum expiration of the 2-4 year sentence on April 22, 2011.

40. By information and belief, Defendant Chappius was cognizant of Plaintiff's grievance against Hulton and the allegations of arson and determined to withhold said good time in retaliation for said grievance and/or as [sanction] for the alleged arson on Plaintiff's part.

41. On January 27, 2011, Plaintiff was housed in cell B-18-20 in "keeplock"/cell confinement as a result of the "Arson" report by Defendant Wagner, which had been adjudicated at a "Tier 3 Superintendent's Hearing" by facility steward, Karen Bielak, on January 13, 2011.

42. The housing of Plaintiff following the arson attributed to him in a general population unit allowing access to cigarette lighter(s) and flammable materials undermines supervisory belief in Wagner's report, as does Bielak's disposition which allowed him to remain there instead of the more restrictive environment of [the] Special Housing Unit("SHU").

43. At no time did Plaintiff ever admit to setting fire to his *own* [imperative] legal papers

7

and denied this to Bielak, however, he agreed to waive an inmate witness who observed the true culprit and "plead" guilty if Bielak would sanction him only "keeplock,"(thus allowing him to remain in general population and avoid any separation from his legal paperwork, Plaintiff's expressed priority.

44. On January 27, 2011, to Plaintiff's bewilderment, Defendant Carhart, on duty on B-18 company, loudly threatened to "*cut* [Plaintiff's face] *open from ear-to-ear*" if she had to "*answer one more fucking 'tab',*" which Plaintiff interpreted to mean grievance.

45. Plaintiff perceived Carhart was retaliating for his grievance concerning Defendant Hulton since, theretofore, Plaintiff had had only one previous contact with Carhart, in C-Block prior to his departure for resentencing, and that not adverse in nature.

46. Concerned that Carhart might persist in her ostensible vendetta against him, Plaintiff documented the incident by an inmate grievance dated February 1, 2011.

47. The next time Plaintiff encountered Carhart was on February 11, 2011, when she distributed the unit's inmate mail, including inter-facility mail.

48. It was the routine procedure at Attica CF for inmates in "keeplock" status to deposit in a secured mailbox any materials needed for photocopying by the facility law library and said materials are returned to the inmate via regular facility mail either that afternoon or the next; Plaintiff had done this numerous time previously with no losses.

49. However, on February 11, 2011, when Carhart was on duty, he did *not* receive back and never did an original CPLR Article 78 petition or copies thereof that he had submitted that morning for photocopying; ultimately, Plaintiff had to request copies from the court clerk.

50. Plaintiff filed an inmate grievance dated February 15, 2011, alleging Carhart had

8

disposed of his papers in retaliation for his earlier grievance concerning her threat against him.

51. On February 21, 2011, Defendant Carhart came on duty and proceeded to dispense the morning meal to the inmates on B-18 company, announcing "*female on the company*," something she had not done previously.

52. When Carhart approached "Plaintiff's" cell, she provided him his meal tray and said to him "*Put that away, my son's got a bigger one than that…*,", dropped a bar of DOCS-produced "Corcraft" soap at her feet and said "*And you're throwing soap, too, huh*?"

53. Carhart was attired in regular uniform with a thick pullover sweater atop her shirt.

54. At this, Plaintiff speculated he was being "set up" by Carhart to prompt his relocation to SHU and use-of-force by personnel enroute, a typical practice at Attica CF, especially after insult or offense against female personnel.

55. Carhart, however, rather than activating her personal alarm to summon aid, or even departing the location posthaste, routinely served the other twenty-odd cells and, instead of leaving the tier by the reverse side, avoidably passed by Plaintiff's cell a second time, casually pushing the service cart ahead of her.

56. Within ten minutes, sergeant Schiefer, accompanied by personnel of Z. Magin and Burridge, operating a video-recording camera, approached Plaintiff's cell and directed him to "*'cuff up*," submit to handcuffing, precedent to movement to SHU.

57. Anxious and alarmed for the security of his legal papers, Plaintiff expressed this to Schiefer and implored him to secure the cell and safeguard these materials; Schiefer, to his credit, invited Plaintiff to observe as he physically locked the cell door.

58. Plaintiff was uneventfully escorted to the SHU where, ultimately sanctioned on a report of assault and lewd conduct by Carhart, he remained until expiration of his sentence on April 22, 2011 and release from custody.

59. When Plaintiff's property was issued to him by B. Hembruck on February 25, 2011, every document that had been in cell B-18-20 when he left it, secured by Schiefer, was absent.

60. By information and belief, Defendant Carhart, alone or in collusion with unknown other personnel, pilfered and/or destroyed Plaintiff's legal materials in retaliation for his use of the Inmate Greivance Program("IGP") and/or to hinder him from utilizing the same.

61. Plaintiff filed a facility claim on March 9, 2011, revised on April 14, 2011, which was denied, and appealed this, which was denied.

62. As a direct result of the actions of the Defendants, the Plaintiff suffered physical and psychological injuries.

63. Defendants acted with reckless or callous indifference to the rights of the Plaintiff and/or were motivated by evil motive or intent.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 USC § 1983- First Amendment Speech)

64. Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the Complaint.

65. Plaintiff engaged in speech which was protected under the First and Fourteenth Amendments to the Constitution of the United States.

66. The conduct of Defendants described above was undertaken in retaliation for Plaintiff exercising his right to speak and or seek redress of grievance.

10

67. Upon information and belief, Defendant Wagner had an agreement with an inmate "porter" named "Petey" for the purpose of destroying Plaintiff's legal papers and depriving him of his rights.

68. Upon information and belief, Defendant Wagner knew or should have known that individual inmate "Petey" was intent on destroying Plaintiff's legal papers..

69. The conduct of Defendants described above was undertaken for the purpose of deterring the Plaintiff from exercising his right to speak and/or seek redress of grievance(s).

70. The conduct of Defendants had the effect of deterring the Plaintiff from exercising his right to freedom of speech and/or would have deterred a similarly-situated individual of ordinary firmness from exercising his or her rights.

71. Defendants violated Plaintiff's rights while acting under color of the law.

## AS AND FOR A SECOND CAUSE OF ACTION
### (42 USC § 1983- Excessive Use of Force)

72. Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the Complaint.

73. The individual defendants solicited, encouraged and facilitated the assault of Plaintiff.

74. Upon information and belief, Defendants Wagner and/or Hulton had an agreement with an individual inmate unit "porter" named "Petey" for the purpose of assaulting the Plaintiff and depriving him of his rights.

75. As a result of this agreement, this inmate did in fact assault the Plaintiff, causing him significant harm.

76. The Plaintiff suffered significant injuries.

11

77. Plaintiff did not consent to any physical contact with the Defendants nor inmate agents thereof.

78. Defendants' actions were unjustified, unreasonable and not otherwise privileged.

79. The Defendants maliciously and sadistically utilized force to cause harm to the Plaintiff.

80. Defendants' actions violated the Eighth Amendment to the United States Constitution.

81. Defendants violated Plaintiff's rights while acting under color of the law.

## AS AND FOR A THIRD CAUSE OF ACTION
### (42 USC § 1983-Failure to Protect the Plaintiff)

82. Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the Complaint.

83. Defendants had an affirmative duty to undertake reasonable measures to guarantee the safety of inmates, including the Plaintiff.

84. Upon information and belief, Defendants Wagner and/or Hulton knew or should have known that individual inmate named "Petey" was intent on assaulting the Plaintiff.

85. Upon information and belief, despite knowing the intention of inmate "Petey," the Defendants undertook no measures to guarantee the safety of the Plaintiff.

86. Upon information and belief, the individual Defendants were aware that the assault would take place, had a reasonable opportunity to intervene and prevent harm to the Plaintiff but intentionally refused and/or failed to intervene to prevent the assault or otherwise guarantee the safety of the defendant.

87. Defendants' actions were violative of the Eighth Amendment to the Constitution.

88. Defendants violated Plaintiff's rights while acting under color of the law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (42 USC § 1983- Substantive Due Process)

89. Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the Complaint.

90. Defendants' actions were so egregious and outrageous that they may fairly be said to shock the contemporary conscience.

.

91. Defendants' actions violated Plaintiff's Substantive Due Process rights under the 14th Amendment to the U.S. Constitution.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Punitive Damages)

92. Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the Complaint.

93. Defendants acted with reckless disregard of Plaintiff's Constitutional rights and/or with malice toward Plaintiff.

94. Due to the wanton, reckless and malicious nature of Defendants actions, Plaintiff is entitled to punitive damages against Defendants.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (42 USC § 1983- Conspiracy to Deprive Plaintiff of his Rights)

95 .Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs in the Complaint.

96. Upon information and belief, Defendants Wagner and/or Hulton had an agreement

with the inmate identified as "Petey" for the purpose of destroying Plaintiff's legal materials and  assaulting the Plaintiff and depriving him of his rights.

97. As a result of this agreement, said inmate did in fact burn the Plaintiff's legal materials and assault the Plaintiff, depriving him of his rights and causing him significant harm.

98. Defendants actions were taken while acting under color of the law.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally as follows:

A. Compensatory, liquidated and/or other monetary damages against the Defendants in the sum of $400,000;

B.  Punitive Damages against the Defendants in the amount of $2,000,000;

C. The costs, disbursements, attorneys' fees and expert witness fees incurred in enforcing Plaintiff's rights and prosecuting this action;

D. For such other and further relief as the Court deems just and proper and equitable.


Dated: 1 AUGUST 2012
Albany, New York

By: _Gregory V. Brown_
     Gregory V. Brown
     251 State Street Apt 3B
     Albany, NY 12210
     (518)-542-8187
     xlieutenantusa@yahoo.com