UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GREGORY BROWN,

                Plaintiff,

      v.                                                **DECISION AND ORDER**
                                                  12-CV-736S

ERIC T. WAGNER, EDWARD G. HULTON, JR.,
MICHAEL KALINOWSKI, PAUL CHAPPIUS, and
DEANNA J. CARHART,

                Defendants.

      1.      *Pro se* Plaintiff, Gregory Brown, was at all relevant times an inmate in the custody of the New York Department of Corrections and Community Service ("DOCCS") at the Attica Correctional Facility. He brings this action under 42 U.S.C. § 1983 against five correctional officers of that facility, alleging that they violated his constitutional rights.

      Defendants move to partially dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, that motion is granted in part and denied in part.

      2.      Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

      When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the

plaintiff's favor. <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. <u>Iqbal</u>, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. <u>Id.</u> at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

Cognizant of the distinct disadvantage that *pro se* litigants face, this Court has read Brown's submissions carefully and liberally, and has interpreted them to raise the strongest arguments that they suggest. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). This principle merits particular weight when a civil rights violation is alleged. <u>See</u> <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004). But, "even *pro se* plaintiffs asserting civil rights claims are not exempt from <u>Twombly</u>'s threshold that the pleadings must contain factual allegations sufficient to raise a right of relief above the speculative level." <u>Arias–Mieses v. CSX Transp. Inc.</u>, 630 F. Supp. 2d 328, 331 (S.D.N.Y. 2009) (internal quotations omitted).

3.       Brown alleges that Defendants deprived him of his constitutionally secured
rights on three separate, but (according to him) related occasions.

First, according to his complaint,[1] on December 4, 2010, an inmate known only as
"Petey," who was an "inmate porter," discovered a note composed by Brown and
addressed to "supervisory personnel"; it charged inmate porters with stealing Brown's
food. (Compl., ¶ 15.) Apparently in response to this discovery, Petey called Brown a "rat,"
and told him that he "better get the fuck off this unit." (Compl., ¶ 20.) The next day,
according to Brown, Petey set fire to some belongings in Brown's cell while Brown was at
lunch in the mess hall. (Compl., ¶ 21; Am. Compl., at 5.) Then, apparently a short time
thereafter, while Brown was waiting outside Correction Officer Michael Kalinowski's office,
Correction Officer Edward "Hulton and/or [Correction Officer Eric ] Wagner endeavored to
provoke Plaintiff by throwing pistachio nut shells and other trash items at his back."
(Compl., ¶ 25.) Further, Brown alleges that Hulton then "threatened to 'break [Plaintiff's]
fucking neck if [he] turned around' in response to said taunts." (Compl., ¶ 25) (alterations
in original). Later, still in the process of moving to a new cell because of the fire, Hulton
again threatened to break Brown's neck. (Compl., ¶ 28.)

4.       Brown eventually collected his property from his old cell and was told to wait
in the "narrow 31-32 company entranceway in the 'frisk [] position.'" (Compl., ¶ 29.) While
in this position,  Brown alleges that Wagner and Hulton "coordinat[ed]" with "Petey," who
"struck [Brown] from behind under the left jawbone, causing his forehead to impact the

---

[1]On August 3, 2012, Brown submitted a detailed, typed complaint with all the trappings of an
attorney-prepared document. (Docket No. 1.) Roughly six weeks later, Brown submitted an "amended
complaint" using the Western District of New York's prisoner complaint form. (Docket No. 4.) The
amended complaint contains fewer causes of action and far less factual detail. Although an amended
complaint typically supersedes prior complaints, see International Controls Corp. v. Vesco, 556 F.2d 665,
668 (2d Cir. 1977), given Brown's *pro se* status, the Court has read them in conjunction with one another.
(See 11/28/12 Order; Docket No. 7.)

bars, which lacerated Plaintiff's scalp, causing profuse bleeding and render[ing] him unconscious." (Compl., ¶ 30, Am. Compl, at 5.) Brown was taken to the hospital and given two staples to close his head wound. (Compl., ¶ 31.)

The same day, Brown alleges that Wagner composed an Inmate Misbehavior Report, alleging that Brown had set fire to his own cell. (Compl., ¶ 33.) On December 9, 2010, Brown submitted a grievance, believing at that time that Hulton – not Petey – struck him on December 5, 2010. (Compl., ¶ 34.) He didn't learn that it was Petey who struck him until after this litigation commenced. (Am. Compl., at 5.)

5.     The next incident relates to a hearing before the "Time Allowance Committee." At the hearing, citing Brown's need to complete "Aggression Replacement Training," the committee and Paul Chappius, its chairman, declined to apply Brown's good time credits to his sentence. (Compl., ¶ 37.) As a result, instead of being released early, Brown "was held to the maximum expiration of the 2-4 year sentence." (Compl., ¶¶ 37, 38; Am. Compl., at 6.) But Brown alleges that the proffered need for aggression training was only pretext. According to Brown, Chappius' true motivation was retaliation: Chappius, Brown alleges, was aware of his grievance against Hulton, and he withheld the good time credits because of it. (Compl., ¶ 40.)

6.     The last series of incidents began in January of 2011. At that time, Correction Officer Deanna Carhart, without provocation, "loudly threatened to 'cut Plaintiff's face open from ear-to-ear' if she had to 'answer one more fucking tab,' which Plaintiff interpreted to mean grievance." (Compl., ¶ 44). Brown believes that, because he had only one other, neutral encounter with Carhart, she was referring to the grievance he submitted against Hulton. (Compl., ¶ 45.) Brown then filed a separate grievance documenting this threat.

(Compl., ¶ 46.)

The next time Carhart encountered Brown was on February 11, 2011, when Carhart was distributing mail to the inmates. Brown did not receive some legal papers that he believed Carhart should have delivered to him. He therefore filed another grievance against Carhart documenting this omission on February 15, 2011. (Compl., ¶¶ 49–50.)

Then, on February 21, 2011, Carhart again approached Brown's cell, announced "female on the company" (which, Brown alleges she had not done previously), and made a degrading comment suggesting that Brown's penis was exposed. (Compl., ¶¶ 51–52.) Brown claims that Carhart "falsely alleged [that] Plaintiff offended and assaulted her." (Am. Compl., ¶ 6.) As a result of this charge, Brown was taken to the Special Housing Unit ("SHU") for segregation, where he remained until his complete release from custody on April 22, 2011. (Compl., ¶ 58, Am. Compl., at 6.) He claims that while in the SHU, Carhart "alone or in collusion with unknown other personnel, pilfered and/or destroyed Plaintiff's legal materials." (Compl., ¶ 60.)

7.     Brown asserts five causes of action in his original complaint and three – sometimes overlapping – claims in his "amended complaint."[2] He brings all his claims under 42 U.S.C. ¶ 1983.

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386,

---

[2]He also asserts a "cause of action" for punitive damages in the original, but not the amended, complaint.

5

393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).

8.      As an initial matter, any claims against Defendants in their official capacity must be dismissed. Brown seeks only monetary damages, and such claims, asserted against state officials acting in their official capacity are barred. See Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Nash v. McGinnis, 585 F. Supp. 2d 455, 464 (W.D.N.Y. 2008) (citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("Claims against state employees in their official capacity are deemed claims against the state itself," and are [] barred by the Eleventh Amendment.").

9.      As for the claims asserted against Defendants in their individual capacity, Brown first alleges (in both complaints) that the assault, perpetrated by Petey, was organized by Defendant Wagner and was carried out in retaliation "for Plaintiff exercising his right to speak and or seek redress of grievance." (Compl., ¶ 66.) This is substantially similar to his second and final causes of action in his original complaint, where he claims that "Defendants solicited, encouraged, and facilitated the assault of Plaintiff, (Compl., ¶ 73), and that "Defendants Wagner and/or Hulton" conspired with Petey for the purpose of destroying his property and assaulting him, (Compl., ¶ 96).[3]

Defendants move to dismiss each of these claims.

"A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Sommer

---

[3]The conspiracy claim is constued to be brought under 42 U.S.C. § 1985. See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) ("The plaintiffs' claim under 42 U.S.C. § 1983 . . . should actually be stated as a claim under Section 1985, which applies specifically to conspiracies.").

v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983 ) (per curiam). Here, each of the three causes of action identified above hinge on an alleged agreement between a corrections officer and Petey, who allegedly ignited the fire and perpetrated the assault. But Brown has failed to plausibly allege that there was any agreement between Hulton, Wagner, or Petey. His allegations are based on speculation, and, under established case law, that is simply not enough. See Flores v. Levy, No. 07–CV–3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (citing Twombly, 127 S. Ct. at 1965) ("[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'").

Brown does not substantively argue otherwise. When he finally submitted his response to Defendants' motion to dismiss (after repeated failures and two warnings from this Court), he simply asserts that his allegations are not conclusory. But he fails to point to any allegation that would plausibly raise an inference that Petey and a corrections officer had an agreement to harass and assault him.

If anything, the complaint suggests that Petey, believing that Brown was a "rat," acted for his own reasons when assaulting Brown. And further, Brown's claim that the corrections officers desired to retaliate against him for filing a grievance is unsupported even by his own allegations: he did not file his first grievance, at least as identified in the complaints, until after the fire and the assault occurred. Accordingly, the first cause of action in both the original and amended complaints, and causes of action numbered two and six in the original complaint, are dismissed.

****

10.     Defendants also seek to dismiss Brown's claim against Paul Chappius, who,

Brown alleges, impermissibly revoked or denied him good time credits. Defendants contend that the rule commonly associated with the Supreme Court's decision in <u>Heck v. Humphrey</u> bars Brown's claim. 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). That rule provides that an inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction or sentence has been reversed or otherwise invalidated. This is meant to reduce overlap between the writ of habeas corpus and claims under § 1983 and it "includes situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement." <u>Odom v. Pataki</u>, No.  00 CIV. 3727 (DC), 2001 WL 262742, at *3  (S.D.N.Y. Mar. 15, 2001) (citing <u>Edwards v. Balisok</u>, 520 U.S. 641, 646–48, 117 S. Ct. 1584, 137 L .Ed. 2d 906 (1997)).

But Brown alleges that he was released before commencing this action. (Am. Compl., at 1) ("Plaintiff unconditionally released [on] 4/22/2011 . . . ."). And the <u>Heck</u> rule arguably does not apply to those no longer in custody. <u>See</u> <u>Poventud v. City of New York</u>, 715 F.3d 57, 61–62 (2d Cir. 2013), *vacated en banc on other grounds*, 12-1011-cv (2d Cir. Jan. 14, 2014). As the panel decision in <u>Poventud</u> explained:

> the law of this Circuit makes clear that a plaintiff alleging civil rights violations in connection with his conviction or imprisonment must have access to a federal remedy either under habeas or under § 1983. Because [the plaintiff] is not in custody, he has no remedy under habeas. He must be able, therefore, to pursue relief under § 1983.

<u>Id.</u>

Indeed, going back further, the Second Circuit has held that "because [the plaintiff] is not and never was in the custody of the State, he . . . has no remedy in habeas corpus" and "[h]aving escaped the jaws of <u>Heck</u>, [the plaintiff] should therefore be permitted to

pursue his § 1983 claim in the district court." <u>Leather v. Eyck</u>, 180 F.3d 420, 422 (2d Cir. 1999); <u>see also</u> <u>Huang ex rel. Yu v. Johnson</u>, 251 F.3d 65, 75 (2d Cir. 2001); <u>Green v. Montgomery</u>, 219 F.3d 52, 60 n. 3 (2d Cir. 2000) ("<u>Heck</u> acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody).")

Then-Chief Judge Dennis Jacobs has called these holdings into question. Dissenting in the panel's <u>Poventud</u> decision, he fervently asserted that this rule – that <u>Heck</u> applies only to inmates and *not* those outside of custody – is incongruous with both Second Circuit precedent and <u>Heck</u> itself; he wrote, "My objection goes deep, to the root of the error in Second Circuit cases that prefer dicta in <u>Heck</u> to its holding – a holding that confirmed longstanding Second Circuit law." 715 F.3d at 66. On rehearing *en banc*, the full court expressed no preference for the view of either the panel majority or Judge Jacobs. "As we note several times in this opinion," wrote Judge Wesley for the *en banc* majority, "we decide this matter on the narrowest possible grounds without passing any judgments on the views previously expressed by either the members of the panel majority . . . or by the then lone dissenter." 12-1011-cv, at 12 n. 7.

In the end, while acknowledging Judge Jacobs' dissent and the contention that the <u>Leather</u> line of cases misconstrue both earlier Second Circuit holdings and the Supreme Court's ruling in <u>Heck</u>, this Court is bound to follow Second Circuit precedent as it is currently constituted. And there is no clearer or more recent precedential pronouncements than those that find "<u>Heck</u> acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him." <u>Green</u>, 219 F.3d at 60 n. 3. The recent <u>Poventud</u> *en banc* decision does not alter this; indeed, the court took pains to emphasize that it expressed no

view on the question. Thus, because Brown, free from custody, does not have the benefit of a habeas corpus remedy, the rule announced in <u>Heck</u> will not bar his § 1983 claim here. Further, because Defendants seek to dismiss Brown's denial-of-good-time-credits claim exclusively on grounds that <u>Heck</u> bars it, their motion in this respect is denied.

****

11.    With the  exception of Brown's substantive due process claim, Defendants do not move to dismiss the remainder of Brown's claims at this time. Construed broadly, those remaining are asserted against (1) Carhart for retaliation; (2) Wagner and Hulton for failure to protect; and (3) Kalinowski for failure to protect.

Regarding his substantive due process claim, which Defendants do seek to dismiss, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due processes." <u>Velez v. Levy</u>, 401 F.3d 75, 94 (2d Cir. 2005). Because the remaining claims sound in the First Amendment (retaliation) and the Eighth Amendment (failure to protect) of the Constitution, Brown's substantive due process claim – his fourth cause of action in the original complaint – in which he alleges broadly that Defendants' actions "shock[ed] the contemporary conscience," (Compl., 90), must be dismissed. To the extent that Brown's remaining allegations are not subsumed in these three causes of action, this Court finds that they are not sufficiently shocking to state a substantive due process claim.

****

IT HEREBY IS ORDERED, that Defendants' partial motion to dismiss (Docket No.

16) is GRANTED in part and denied in part.

Dated:   January 19, 2014
          Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court