UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY V. BROWN (08A1076)

                         Plaintiff,

    -vs-                                                        12-CV-736-WMS-LGF


ERIC T. WAGNER; EDWARD G. HULTON, JR.;
MICHAEL KALINOWSKI; PAUL CHAPPIUS; and
DEANNA J. CARHART,

                         Defendants.
_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

                                          ERIC T. SCHNEIDERMAN
                                          Attorney General of the
                                             State of New York
                                          Attorney for the Defendants

                                          By: *Ryan L. Belka*
                                          RYAN L. BELKA
                                          Assistant Attorney General
                                             of Counsel
                                          Main Place Tower
                                          350 Main Street, Suite 300A
                                          Buffalo, NY 14202
                                          Telephone:  (716) 853-8400
                                          *Ryan.Belka@ag.ny.gov*

PRELIMINARY STATEMENT

Plaintiff, Gregory Brown, after having the majority of his claims dismissed has surviving claims of failure to protect, retaliation (related to a misbehavior report and SHU confinement) and retaliation (related to denial of good-time credits) under 42 U.S.C. § 1983. The depositions in this case confirmed the inability of Plaintiff to prove its failure to protect case against Officer Edward Hulton and Michael Kalinowski beyond the speculative level. Further, Plaintiff's cannot prove claims of retaliation (related to denial of good-time credits) against Superintendent Paul Chappius above the speculative level. Mr. Chappius is further protected by qualified immunity and the Plaintiff's own conduct in which he clearly refuses to participate in programs designed to rehabilitate himself – which he understood would place good time in jeopardy.

As a result of these arguments, this Court should dismiss the remaining claims against Officers Edward Hulton, Michael Kalinowski and Superintendent Paul Chappius in their entirety under Federal Rules of Civil Procedure 56.

FACTS

The facts of this motion are fully set forth in the Statement of Undisputed Facts and the accompanying declarations of Ryan L. Belka, dated April 13, 2015. Defendants respectfully refer the Court to the Statement of Undisputed Facts (SOF) and the accompanying declarations for a complete recitation of the relevant facts.

SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c) a moving party is entitled to summary judgment as a matter of law where there is no material issue of fact. *Celotex Corp. v. Clatrett,* 477 U.S. 317, 322 (1986). "All facts must be viewed in the light most

favorable to the non-moving party and the non-moving party must be given the benefit of all reasonable inferences." *Salahuddin v. Coughlin*, 993 F.2d 306 (2d Cir. 1993). However, the non-moving party may not rest on mere allegations or denials of the moving party's pleadings, but must set forth specific facts showing that a genuine issue for trial exists. Fed. R. Civ. P. 56(e). Additionally, the non-moving party may not rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible. *Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993). A principal purpose of summary judgment is to "isolate and dispose of factually unsupported claims or defense." *Celotex*, 477 U.S. at 323–24.

ARGUMENT

**I.   PLAINTIFF CANNOT DEMONSTRATE FAILURE TO PROTECT AS TO EDWARD HULTON**

The Constitution does not mandate comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25 (1993). This case requires us to define the term deliberate indifference, as we do by requiring a showing that the official was <u>subjectively</u> <u>aware</u> of the risk." *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).

"It is not… every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994). Two requirements must be met. The first is that the harm alleged must be "sufficiently serious" such that the prison officials act or omission must deny "the minimal civilized measure of life's necessities." *Id.* The second flows from the principle that only unnecessary and wonton infliction of

pain implicates the Eighth Amendment; that a prison official must have a 'sufficiently culpable state of mind." *Id.* That is unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

"Is it that you do not have a recollection or you believe you had no involvement in any of the events… **Both**." The Deposition of Edward Hulton (Hulton Depo.), 41:4-7. "You also believe you were not involved? **Correct**. Hulton Depo., 41:12-13.  SOF, ¶ 8.

The facts and circumstances surrounding Plaintiff's failure to protect claim occurred exclusively on December 5, 2010 on 31-32 Company in C Block at Attica Correctional Facility (Attica).  SOF, ¶¶ 6-9; Complaint [Doc. 1] at 4-6.  After being released from his cell, Plaintiff was awaiting transfer when another inmate, Alexander Lallave, attacked him. *Id.* at 5-6.  SOF, ¶ 9.  31-32 Company is on the first floor of C Block in Attica.  Hulton Depo., 43:7-8.  SOF, ¶ 10.  Edward Hulton was on the third floor working "A mess gate" on December 5, 2010 and was not present at any time during incidents which lead to Plaintiff's failure to protect claim.  Hulton Depo., 24:4-9; 42:9-12; 42:23 – 43:8.  SOF, ¶¶ 7-8, 11-13.  Officer Hulton had no knowledge of Gregory Brown's transfer and only learned of the inmate assault from the allegations in Mr. Brown's Complaint.  Hulton Depo., 47:3-17.  SOF, ¶ 12.

Officer Hulton's recollection of not being aware of inmate Lallave's assault on Plaintiff and not being present is undisputed by the other accounts of the incident.  SOF, ¶ 13.  Plaintiff claims that Hulton was present earlier in the day but leaves before plaintiff is transferred and attacked by another inmate.  Deposition of Gregory Brown (Brown

Depo.), 32:25 – 33:9; 66:3-15; 85:17-20.  SOF, ¶ 12-13.  Plaintiff provides no testimony or evidence that Hulton subjectively believed that plaintiff was at a substantial risk of serious harm and subsequently acted with deliberate indifference to that risk of serious harm.  The Declaration of Ryan Belka (Belka Dec.), ¶ 6.  SOF, ¶ 14.  In fact, Plaintiff had grieved Hulton for assault pertaining to this incident but he now understands that Hulton was not involved.  Brown Depo., 85:17-20.  SOF, ¶ 15.

Further, inmate Lallave was deposed and testified that he assaulted the Plaintiff and plead guilty to the assault at a Tier Hearing.  The Deposition of Alexander Lallave (Lallave Depo.), 54:13 - 55:12.  SOF, ¶ 17.  He further testified that Hulton was not present and that Hulton had nothing whatever to do with the assault on Plaintiff.[1]  Lallave Depo., 54:13 - 55:12.  SOF, ¶ 17.

Here, Plaintiff's claims of Hulton's involvement do not rise above the speculative level required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiff speculates of a grand scheme that involves coordinated events of multiple officers but provides no evidence to support such a claim.  Further, what evidence does exist contradicts consorting corrections officers.  The officers testified that they are not friends, do not socialize outside of work and have no knowledge of each other's family lives.  The Deposition of Michael Kalinowski (Kalinowski Depo.), 11:21 – 12:8, 13:8-19; 13:23 - 14:15; Hulton Depo., 19:9 – 21:23; the Deposition of Erik Wagner (Wagner Depo.,), 15:6 – 18:21. SOF, ¶ 25. They are simply co-workers, who occasionally run into each other on the job and, as a result, are unlikely to consort.  Further, Hulton's testimony as to his whereabouts on the

---

[1] Plaintiff's counsel has failed to provide copies of the Hart deposition transcript in advance of the dispositive motion deadline.  The deposition of Zebadiah Hart took place pursuant to Plaintiff's deposition notice on March 13, 2015.  As a result, supporting documentation may be provided as a supplement as soon as Plaintiff's counsel provides the deposition transcripts.

day of and during Lallave's assault on the Plaintiff are undisputed, and confirmed by the assaulting inmate. Lallave Depo., 54:1 – 55:12. Plaintiff cannot prove that Hulton was subjective aware of any substantial risk of serious harm about to befall the plaintiff above the speculative level. As a result, Plaintiff's failure to protect claim against Officer Hulton must be dismissed.

## II.     PLAINTIFF CANNOT DEMONSTRATE FAILURE TO PROTECT AS TO MICHAEL KALINOWSKI

The Constitution does not mandate comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25 (1993). This case requires us to define the term deliberate indifference, as we do by requiring a showing that the official was <u>subjectively</u> <u>aware</u> of the risk." *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).

"It is not… every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison official s responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994). Two requirements must be met. The first is that the harm alleged must be "sufficiently serious" such that the prison officials act or omission must deny "the minimal civilized measure of life's necessities." *Id.* The second flows from the principle that only unnecessary and wonton infliction of pain implicates the Eighth Amendment; that a prison official must have a 'sufficiently culpable state of mind." *Id.* That is unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Like with Hulton above, Plaintiff's allegations for failure to protect against Sargent Michael Kalinowski requires a conspiracy between corrections officers that is inconsistent with the undisputed evidence. To the contrary, upon learning that there was a fire in Plaintiff's cell, a fire for which the Plaintiff has admitted that he started[2], Sargent Kalinowski offered the Plaintiff protective custody. Kalinowski Depo., 27:14 – 30:12. SOF, ¶ 20. Although the Plaintiff denied protective custody, given the circumstances of the fire and Plaintiff's transfer being necessitated due to his cell being uninhabitable, Plaintiff was placed by Sargent Kalinowski into involuntary protective custody. *Id.* SOF, ¶ 21. Contrary to Plaintiff's allegations, Michael Kalinowski made all efforts to protect Gregory Brown.

Further, Plaintiff has presented no evidence that Sargent Kalinowski ignored or recklessly disregarded a subjectively held a belief that the Plaintiff was under a substantial risk of serious harm. Belka Dec., ¶ 8. SOF, ¶ 22. As argued above, the facts of this case show the exact opposite of Plaintiff's allegations, that this Sargent followed all appropriate protocol in securing the safety of facility and of Plaintiff specifically. Kalinowski Depo., 27:14 – 30:12. SOF, ¶¶ 19-26.

Plaintiff's allegations are purely conclusory and do not rise above the required speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The officers allegedly involved in this conspiracy are not friends and are mere co-workers who are unlikely to conspire. Kalinowski Depo., 11:21 – 12:8, 13:8-19; 13:23 - 14:15; Hulton Depo., 19:9 – 21:23; the Deposition of Erik Wagner (Wagner Depo.,), 15:6 – 18:21. SOF, ¶ 25. There is no evidence of consorting corrections officers and the evidence presented offers nil as to

---

[2] Plaintiff plead guilty to the arson at a Tier Hearing on the matter. Brown Depo., 26:5 – 2715. Plaintiff now conveniently denies starting the fire in his cell. *Id.*

7

when and where this alleged conspiracy would have been forged.  Belka Dec., ¶¶ 6, 8. SOF, ¶¶ 14, 22.  Further, Plaintiff's alleged motive, that the corrections officers were out to get him because his sentence was reduced on appeal, does not hold up under any amount of scrutiny.  Complaint [Doc. 1] at 2-3.  All of the officers, including Sargent Kalinowski testified that they were unaware of Plaintiff's sentence duration or his appellate victory.  Kalinowski Depo., 35:14 – 36:9; Hulton Depo., 39:16 – 40:6.   Like most of us, they are simply working through the pile of work on their desk and are simply not concerned about whether or not any particular inmate won an appeal reducing his sentence.  Simply put, corrections officers do not care why you are in their facility, just that you are there.

Plaintiff cannot prove that Kalinowski was subjective aware of any substantial risk of serious harm about to befall the plaintiff above the speculative level. As a result, Plaintiff's failure to protect claim against Sargent Kalinowski must be dismissed.

### III.     UNINVOLVED DEFENDANTS MUST BE DISMISSED

As established in *Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) and reaffirmed in *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995), the mere allegation that a defendant was somehow involved in a constitutional violation is insufficient to maintain a §1983 claim. 781 F.2d at 324; 46 F.3d at 195. Hulton and Kalinowski were not personally involved in any actionable conduct.  As to Kalinowski, "a plaintiff asserting a §1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation."  *Saxon v. Attica Med. Dep't*, 468 F. Supp. 480, 482 (W.D.N.Y. 2007) (citing *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).  "Absent some personal involvement [by a defendant]

. . . in the allegedly unlawful conduct of his subordinates, he cannot be held liable under § 1983." *Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y. 1989) (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)). See also *Rizzo v. Goode*, 423 U.S. 362 (1976); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993). Here, no personal involvement is alleged beyond the speculative level and the record demonstrates Plaintiff's claims are based on proximity to events alone – having nothing to do with the actual facts of the case. Accordingly, the failure to protect claims against Hulton and Kalinowski should be dismissed on the grounds of lack of personal involvement.

## IV.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

State officials enjoy qualified immunity from suits seeking damages under 42 U.S.C. § 1983. *Procunier v. Navarette*, 434 U.S. 555 (1978). Qualified immunity shields officials from liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[3] The standard for an official's liability in a civil damages action turns upon the objective reasonableness of the official's conduct and whether the official could "fairly be said to know that the law forbade [such conduct]." *Id.*; *see also Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1987) ("[T]he boundaries of the supposed 'right' must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness of his actions was evident."); *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001) ("An officer's actions are objectively reasonable if 'officers of reasonable competence could disagree on

---

[3] *See also Saucier v. Katz*, 533 U.S. 194 (2001), *rev'd by Pearson v. Callahan*, 555 U.S. 223 (2009).

the legality of the defendants' actions.'" (citation omitted)); *Taravella v. Town of Wolcott*, 599 F.3d 129, 134-35 (2d Cir. 2010).

Plaintiff claims he was improperly denied good time credits by Paul Chappius. Paul Chappius was the chairman of the Time Allowance Committee (T.A.C.) at Attica during 2010 and reviewed Mr. Brown's claim to good time credits. SOF, ¶¶ 27-28. Mr. Brown was disallowed good time due to both his disciplinary history and due to his refusal to participate in rehabilitative programs, specifically Aggression Rehabilitation Training. SOF, ¶ 29. However, despite Mr. Chappius' role as chairman of the T.A.C., the committee decisions regarding good time are simply recommendations which are further reviewed by a number of other levels of review. SOF, ¶¶ 30-31. That is to say, regardless of the recommendation of Mr. Chappius, he does not decide whether or not the Plaintiff was or is denied good time credits. SOF, ¶ 30-31.

Further, the T.A.C. decision in this case was fully justified. Mr. Brown constantly and consistently refused to participate in A.R.T. SOF, ¶ 32. On this basis alone the committee was justified in pulling all of Plaintiff's good time. *Id.* In addition, the Plaintiff has a poor disciplinary history including disobeying direct orders, causing a disturbance, possessing a weapon and the arson which is part of the subject of this lawsuit.[4] SOF, ¶ 33; See Belka Dec. Exhibit G.

Regardless, then Deputy Superintendent of Security (DSS) Chappius could reasonably rely on the information provided by other members of the T.A.C. SOF, ¶ 34. The IRC provided DSS Chappius information concerning Plaintiff's disciplinary history

---

[4] Now Superintendent Chappius testified that although removal of good time for disciplinary purposes is only allowed after a final hearing on the matter – the arson was part of the Plaintiff's disciplinary history and would have been discussed at good time hearing. Plaintiff's disciplinary history alone only allows the T.A.C. to recommend the denial of four months of good time from Plaintiff.

10

and a counselor provided the information concerning Plaintiff's failure to participate in programs. SOF, ¶ 35. DSS Chappius, in this case acting as chairman of the T.A.C., would have been justified in relying on the information provided to him in making the decision he made to recommend that all of Plaintiff's good time be withheld. SOF, ¶ 36.

As a state employee, DSS Chappius is entitled to qualified immunity as long as his conduct was objectively reasonably. In this case, Chappius' undisputed conduct to rely on information provided by the other members of the T.A.C. to make a recommendation to withhold good time credits from Plaintiff which, in the end, goes through a number of other levels of review and was objectively reasonable based on all the information provided to DSS Chappius. As a result, qualified immunity must be applied to this decision and all claims against DSS Chappius must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the motion for judgment on the pleadings dismissing the Complaint in its entirety and grant such further relief as the Court deems proper.

Dated: April 13, 2015
Buffalo, New York

                                       ERIC T. SCHNEIDERMAN
                                       Attorney General of the
                                          State of New York
                                       Attorney for the Defendants

                                       By: *Ryan L. Belka*
                                       RYAN L. BELKA
                                       Assistant Attorney General
                                       of Counsel
                                       Main Place Tower
                                       350 Main Street, Suite 300A
                                       Buffalo, NY 14202
                                       Telephone: (716) 853-8400
                                       *Ryan.Belka@ag.ny.gov*